# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ROBERT L. SCHULZ,

                                 Plaintiff,                1:15-cv-01299 (BKS/CFH)

v.

UNITED STATES OF AMERICA,

                                 Defendant.

---

**Appearances:**

*Plaintiff, pro se:*
Robert L. Schulz
Queensbury, NY 12804

*For Defendant:*
Richard E. Zuckerman
Principal Deputy Assistant Attorney General, Tax Division
Michael R. Pahl
U.S. Department of Justice, Tax Division
Ben Franklin Station
P.O. Box 7238
Washington, DC 20044

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff pro se Robert L. Schulz initiated this action under 26 U.S.C. § 6703(c)(2), alleging that the Internal Revenue Service (the "IRS") erroneously assessed a penalty of $225,000 against him for promoting an abusive tax shelter through two nonprofit entities, We the People Foundation for Constitutional Education, Inc. and We the People Congress, Inc. (together "WTP"), in violation of § 6700 of the Internal Revenue Code, 26 U.S.C. § 6700. (Dkt. No. 8). Defendant United States (the "Government") asserted a counterclaim against Schulz, seeking a

judgment for the unpaid $224,000 balance of the penalty the IRS assessed. (Dkt. No. 29, at 11–17). Having previously determined that, as a matter of law, Schulz is liable for 225 violations of § 6700, (Dkt. No. 88), and that WTP's income is attributable to Schulz, (Dkt. No. 223), all that remains for determination by the Court is the amount of the penalty to be assessed: "the amount of gross income WTP—and by extension, Schulz—derived from . . . organizing and promoting an abusive tax shelter through distribution of the 225 Blue Folders at issue in this case," (Dkt. No. 223, at 16).

Currently before the Court are the parties' motions for summary judgment, (Dkt. No. 243, 244), and their responses thereto, (Dkt. Nos. 249, 250).[1] For the reasons that follow, the parties' motions are granted in part and denied in part.

## II. FACTS

### A. Procedural Background

In 2007, United States District Judge Thomas J. McAvoy granted the Government's request for an injunction against WTP and Schulz, prohibiting them from further promoting an abusive tax shelter—known as the "Blue Folder"—in violation of § 6700. *See United States v. Schulz*, 529 F. Supp. 2d 341 (N.D.N.Y. 2007) ("*Schulz I*"), *aff'd*, 517 F.3d 606 (2d Cir. 2008). Judge McAvoy also ordered Schulz and WTP to produce "a list identifying . . . all persons and entities who have been provided Defendants' tax preparation materials, forms, and other materials containing false information." *Id.* at 358. After Judge McAvoy found Schulz to be in contempt of the Court's order, *see Schulz I*, 2008 WL 2626567, at *4, 2008 U.S. Dist. LEXIS 57948, at *12 (N.D.N.Y. Apr. 28, 2008), Schulz disclosed a list of 225 individuals "showing all

---

[1] Also before the Court is Schulz's motion to appoint trial counsel. (Dkt. No. 232). Because there are no issues of fact remaining for trial, as discussed below, Schulz's motion is denied as moot.

persons to whom [he] mailed a copy of the WTP Forms" at issue in *Schulz I*, (Dkt. No. 190-1, at 51, 53–62).

On March 5, 2015, Schulz received a tax assessment penalty from the IRS, dated March 9, 2015, in the amount of $225,000 for promoting the Blue Folders at issue in *Schulz I*. (Dkt. No. 197-2, ¶ 41). The IRS arrived at that amount using Schulz's list of 225 individuals to whom WTP had distributed Blue Folders in 2003, (Dkt. No. 244-1, at 2), penalizing the lesser of: (i) $1,000 per Blue Folder distributed ($225,000); and (ii) WTP's income reported to the IRS in 2003 ($485,351), (Dkt. No. 243-2, ¶ 7). On November 2, 2015, Schulz initiated this action under 26 U.S.C. § 6703(c)(2), alleging that the IRS erroneously assessed a penalty of $225,000 against him for promoting an abusive tax shelter. (Dkt. No. 8). The Government then asserted a counterclaim against Schulz, seeking a judgment for the unpaid $224,000 balance of the penalty the IRS assessed, plus interest. (Dkt. No. 29, at 11–17).

On March 7, 2017, this Court granted partial summary judgment to the Government, giving preclusive effect to Judge McAvoy's findings in *Schulz I* and holding that Schulz is liable for violating § 6700 by distributing the 225 Blue Folders. (Dkt. No. 88). On July 12, 2018, this Court concluded that WTP's total gross income in 2003 was an inappropriate lodestar by which to measure "gross income . . . derived from a particular, well-defined activity." (Dkt. No. 223, at 11–12 (quoting *Barrister Assocs. v. United States* (*In re MDL-731 Tax Refund Litig.*), 989 F.2d 1290, 1302 (2d Cir. 1993))). Further, the Court found that WTP was Schultz's alter ago and that WTP's income was attributable to him. (*Id.* at 16). The Court noted that "the only issue remaining for trial is the amount of gross income WTP—and by extension, Schulz—derived from the specified activities used to calculate the penalty amount under § 6700, i.e., organizing

and promoting an abusive tax shelter through the distribution of the 225 Blue Folders at issue in this case." (*Id.*).

In a June 25, 2018 letter brief, Schulz indicated for the first time that, of the 225 Blue Folders at issue in this case, only 103 "copies were mailed in 2003." (Dkt. No. 220, at 2; *see also* Dkt. No. 243-2, ¶ 16; Dkt. No. 250, ¶ 16).[2] On July 6, 2018, over six months after discovery had been completed, Schulz informed the Court that he "recently discovered hundreds of documents," (Dkt. No. 222), pertaining to WTP's income from the promotion of the abusive tax shelter. Notwithstanding Schulz's dubious explanation for his belated disclosure,[3] and over the Government's objection to reopening discovery, the Court permitted Schultz to attempt to use the records in this case, and set a schedule for additional, limited discovery on the issue. (*See* Text Minute Entry, July 26, 2018; Dkt. Nos. 234, 237, 240). The Court then permitted the parties to submit additional motions for summary judgement addressing whether, in light of the new documents, there remained a triable issue of fact as to the amount of gross income derived from the 225 Blue Folders distributed in violation of § 6700. (*See* Dkt. No. 241; October 1, 2018 Telephone Conference). The facts relevant to determining the instant motions are as follows.

---

[2] Although Schulz now asserts that he "has never admitted that he 'distributed 225 Tax-Termination Packages in 2003,'" (Dkt. No. 250, ¶ 2), the Court notes that the record is replete with his representations to the contrary, (*see, e.g.*, Dkt. No. 13-1, ¶ 3 (affirming that, "[i]n 2003, . . . Schulz mailed 225 copies of a Blue Folder . . . ."); Dkt. No. 13-9, at 4; Dkt. No. 16-1, ¶ 5 ("In 2003, Schulz . . . petitioned the government for redress of grievances . . . . He also . . . mailed 225 copies to those who requested a copy and who voluntarily sent the organization up to $20."); *id.* ¶ 20 (summarizing the penalty as "$1,000 for each of the 225 Blue Folders . . . that were mailed to people in 2003"); Dkt. No. 197-2, ¶ 29 (calculating total expense of 225 Blue Folders, or $4,500, as a percentage of WTP's 2003 gross revenue); Dkt. No. 214, at 1–2 (stating that the "'abusive tax shelter' according to *Schulz I* was WTP's distribution in 2003 of 225 copies of a Blue Folder"). In any event, the year in which Schulz actually mailed each folder is immaterial to the Court's analysis, as discussed *infra* Part IV.B.1.

[3] Schulz states that his wife, who "is not able to competently testify concerning these matters because of her cognitive impairment," presented him with "hundreds of documents related to the issue at hand," of which Schulz was unaware because they were in "folders . . . set up and maintained by [his wife] years ago." (Dkt. No. 233-1, ¶¶ 3, 7). The Court further notes that the timing of Schulz's disclosure is also suspect, as he "discovered" documents showing proof of income only when confronted—for the first time—with the need to affirmatively establish that WTP derived less than $225,000 in 2003 from distribution of the 225 Blue Folders. (*See* Dkt. No. 216). Indeed, Schulz admits that his earlier disclosures relating to WTP's income were intended only to "prove [he] derived no income directly from" distribution of the Blue Folders. (Dkt. No. 233-1, ¶ 8).

4

B.     **Factual Background**[4]

In March 2003, WTP promoted the Blue Folder "by posting its entire content on WTP's website," making it available "for free downloaded [sic] by any person." (Dkt. No. 250-1, at 10–11). WTP also offered physical copies of the Blue Folder for a suggested donation of $20.00 "to cover . . . printing and mailing costs." (Dkt. No. 250-1, at 10–11). In 2003, WTP distributed 103 Blue Folders by mail, (Dkt. No. 250, ¶ 19), and received "voluntary donations" of varying amounts in connection with all but three, for an average donation of $18.64 per folder, (Dkt. No. 250, ¶ 16). WTP received payments by cash, by check, and through online payment processing services Paypal and Linkpoint. (Dkt. No. 250, ¶ 16). Paypal and Linkpoint "charged WTP a fee for their services, reducing WTP's gross revenue to approximately $19.12" for each $20.00 payment processed online. (Dkt. No. 250, at 4 nn. 11–12). Not including amounts withheld by Paypal and Linkpoint, "WTP received $1,920.48 in voluntary donations for 103 copies of the Blue Folder" distributed in 2003. (Dkt. No. 250, ¶ 19; *see also* Dkt. No. 243-4, at 21–22; Dkt. No. 244-1, ¶ 16; Dkt. No. 251, at 10). WTP mailed an additional 122 Blue Folders between 2004 and 2007. (Dkt. No. 243-4, at 13–14). Schulz has not submitted any documentary evidence establishing the amount of income WTP derived from each.[5]

---

[4] The Court assumes familiarity with the complete procedural and factual history of this case, as set out in *Schulz I*, as well as the Court's previous decisions dated February 11, 2016, May 6, 2016, March 7, 2017, and July 12, 2018 (Dkt. Nos. 23, 25, 88, 223). Only those facts relevant to the parties' motions are set out below and are drawn from the parties' statements of material facts (Dkt. Nos. 243-2, 244-1), responses thereto (Dkt. Nos. 249-1, 250), as well as docket entries incorporated by reference therein and the exhibits attached to the parties' submissions, to the extent that they would be admissible as evidence. Where facts stated in a party's statement of material facts are supported by testimonial or documentary evidence and denied with only a conclusory statement by the other party, the Court has found such facts to be true. *See* N.D.N.Y. L.R. 7.1(a)(3); Fed. R. Civ. P. 56(e).

[5] Schulz has submitted more than 2,000 pages of documentation relating to WTP's sources of income in 2003 other than the Blue Folders at issue in this case. (Dkt. Nos. 244-6 to 244-15). That information, however, is irrelevant to the amount of "gross income derived (or to be derived)," 26 U.S.C. § 6700, from the 225 Blue Folders Schulz is liable for promoting.

**III.**     **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).

Where a plaintiff proceeds pro se, the Court must read his or her submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## IV. DISCUSSION

Schulz argues that: (i) the penalty should be limited to gross income derived from the 103 Blue Folders distributed in 2003, or $1,920.48; (ii) the calculation of WTP's "gross income" from each folder should exclude the processing fees charged by the online vendors; and (iii) WTP was not his alter ego. (Dkt. No. 244, at 3–5). The Government argues that Schulz's penalty should be assessed at $4,500, or $20.00 for each of the 225 Blue Folders distributed, as the amount of income he "earned—or expected to earn"—without regard to the year in which the folder was distributed or the transaction fees withheld by Paypal and Linkpoint. (Dkt. No. 243-1, at 7–8).

7

### A. Blue Folders Distributed in 2003

#### 1. Inclusion of Processing Fees in Gross Income

Schulz argues that processing fees charged by PayPal or Linkpoint should not be included in the calculation of WTP's gross revenue derived from distribution of the folders. (Dkt. No. 250, ¶ 16 nn.10–11). The Government, on the other hand, argues that the fees should be included because "the penalty is based on gross income, not income less fees or costs or costs of goods sold." (Dkt. No. 249, at 8).

Because it is undisputed that WTP and Schulz derived less than $1,000 per Blue Folder, Schulz's penalty is properly assessed as "100 percent of the gross income derived (or to be derived) by such person from such activity." 26 U.S.C. § 6700. Gross income means "all income from whatever source derived." 26 U.S.C. § 61(a). "The definition extends broadly to all economic gains not otherwise exempted," and a "taxpayer cannot exclude an economic gain from gross income by assigning the gain in advance to another party." *Comm'r v. Banks*, 543 U.S. 426, 433 (2005). Because it "is not necessary that the income be deposited or received so long as the taxpayer has an unfettered right to receive it," "deductible credit card processing fees would reduce the amount of petitioners' net . . . profit or loss"—they do "not affect . . . gross receipts." *Patel v. Comm'r*, 96 T.C.M. (CCH) 202 (2008).

Accordingly, the gross income derived from distribution of the Blue Folders is properly calculated without regard to fees charged by Paypal or Linkpoint.

#### 2. Calculation of Penalty

Regarding "the size of the penalty[,] . . . the government [is] entitled to a presumption that its assessment of the penalties [is] correct." *In re MDL-731 Tax Refund Litig.*, 989 F.2d at 1303. The Government argues that, for the 103 Blue Folders distributed in 2003, the penalty is properly assessed at $20.00 per Blue Folder. As indicated above, however, Schulz has adduced

evidence establishing that WTP derived no income from distribution of three folders, $10.00 from one folder, and $20.00 from 99 folders. (Dkt. No. 244-1, at 3). Accordingly, there is no dispute of material fact as to the gross income derived from the 103 Blue Folders distributed in 2003, and the penalty is properly assessed at $1,990.00.

    **B.    Blue Folders Distributed After 2003**

        **1.    Assessment on an Annualized Basis**

Schulz argues that, because "*Schulz I* was directed at an activity undertaken by WTP in 2003," he is only liable for the amount of gross income derived from the 103 Blue Folders distributed in 2003. (Dkt. No. 250, ¶ 2). The Government, on the other hand, argues that a penalty under § 6700 is "computed on a 'transactional' basis, not an 'annual' basis, based on the total income the promoter derived from the scheme." (Dkt. No. 243-1, at 7).

The Second Circuit has explained that the "Internal Revenue Code . . . does not obligate the IRS to assess Section 6700 penalties only on income actually earned during discrete taxable periods." *In re MDL-731 Tax Refund Litig.*, 989 F.2d at 1301. The tax year in which the conduct occurred is irrelevant because "the assessment of a Section 6700 penalty turns on income earned from specific conduct—the organization or promotion of an abusive tax shelter—that may occur at times different from those in which income is actually realized." *Id.* "This is in contrast to other Internal Revenue Code penalties, which depend on whether, and how often, an individual avoids certain tax obligations arising in a particular taxable period." *Id.*

Here, Schulz's theory rests entirely on the wording of this Court's June 11, 2018 Text Order, which directed the parties to address whether there was as "material issue of fact as to whether WTP derived more than $225,000 in gross income in 2003." (Dkt. No. 216). Schulz, however, ignores the fact that the issue then before the Court was whether his penalty should be assessed at $1,000 per folder—using WTP's 2003 reported "total revenue" of $485,351 as the

9

measure of the "gross income derived . . . from such activity," 26 U.S.C. § 6700—or some lesser amount. That issue was resolved by this Court's July 12, 2018 decision, which expressly rejected the Government's reliance on the "gross annual income method" for calculating Schulz's penalty, and instead concluded that the proper method is to measure the income derived, or to be derived, from the "particular, well-defined activity" of "225 distributions of the Blue Folder." (Dkt. No. 223, at 11–12).

In sum, this Court has already found that: (i) Schulz is liable for distributing 225 Blue Folders in violation of § 6700; and (ii) under that statute, the penalty is properly measured as 100% of the "gross income derived or to be derived" from each Blue Folder distributed. Schulz fails to identify anything in either *Schulz I*, the law of this case, or other caselaw that limits his liability to activities undertaken in 2003.[6] Accordingly, the Court finds unpersuasive Schulz's attempt to narrow the scope of activities for which he may be penalized to 2003 only.

### 2. Calculation of Penalty

As discussed above, the Government contends that the income reasonably expected "to be derived" from each Blue Folder was $20.00. (*See* Dkt. No. 243-1, at 7–8 (quoting *In re MDL-731 Tax Refund Litig.*, 989 F.2d at 1301–02)). Schulz has failed to adduce any evidence regarding the amount of gross income WTP derived from each of the 122 Blue Folders distributed after 2003. It is undisputed, however, that: (i) WTP requested a payment of $20.00 for each copy of the Blue Folder mailed; (ii) in 2003, nearly every individual who requested a Blue Folder paid WTP $20.00; and (iii) WTP mailed an additional 122 Blue Folders between 2004 and 2007. Accordingly, the Court finds there is no genuine issue of material fact remaining

---

[6] As discussed above, Schulz's confusion over the relevant timeframe is entirely of his own making, as he has repeatedly represented to the IRS and this Court that he distributed 225 folders in 2003. *See supra* n.2.

for trial as to the amount of gross income WTP reasonably expected to derive from the additional 122 Blue Folders distributed after 2003, and the penalty for that activity is properly assessed at $20.00 for each. The Court therefore grants the Government's motion for summary judgment to the extent that Schulz's penalty for distributing 122 Blue Folders between 2004 and 2007 is $2,440.00, for a total penalty of $4,430.00.

### C. WTP as Schulz's Alter Ego

Schulz argues that WTP's income should not be attributed to him for the purposes of determining the amount of gross income he derived from the 225 Blue Folders. (*See, e.g.*, Dkt. No. 244, at 4–5). As noted above, however, this Court has already reached the opposite conclusion. (Dkt. No. 223). Schulz's argument is therefore barred by the law-of-the-case doctrine, which "commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). Such reasons include "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Amore v. City of Ithaca*, No. 04-cv-176, 2008 WL 8928574, at *2, 2008 U.S. Dist. LEXIS 45328, at *4 (N.D.N.Y. June 9, 2008) (quoting *New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 395–96 (2d Cir. 1992)).

Here, Schulz asserts that three affidavits he recently procured from former WTP board members, in addition to documents related to WTP's income in 2003, "reopen[] the alter ego issue." (Dkt. No. 244, at 4; Dkt. Nos. 244-2, -3, -4, -6 to -15). This evidence, however, is not newly available; Schulz has provided no explanation as to why he could not have submitted the affidavits previously. Furthermore, Schulz acknowledges that documents he recently

11

"discovered" have been in his possession for the entirety of this litigation. (Dkt. No. 222). The Court finds no basis for re-examination of its prior decision.[7]

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Government's motion for summary judgment (Dkt. No. 243) is **GRANTED** to the extent that Schulz's penalty under 26 U.S.C. § 6700 is properly assessed at $4,430.00, and is **DENIED in all other respects**; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of the Government on its counterclaim (Dkt. No. 29) against Schulz in the amount of $4,430.00, plus statutory interest accruing from March 9, 2015, the date of the assessment; and it is further

**ORDERED** that Schulz's motion for summary judgment (Dkt. No. 244) is **DENIED**; and it is further

**ORDERED** that Schulz's Amended Complaint (Dkt. No. 8) is **DISMISSED with prejudice**; and it is further

**ORDERED** that Schulz's motion to appoint counsel, (Dkt. No. 232), is **DENIED as moot**; and it is further

**ORDERED** that the Clerk is directed provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules; and it is further

**ORDERED** that the Clerk is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated: March 27, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[7] In any event, even were the Court to consider the affidavits, their content does not change the Court's analysis and determination that WTP's income is attributable to Schulz.